**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-CV-23566-MOORE/Elfenbein**

**LOUIS VUITTON MALLETIER**,

Plaintiff,

v.

**DEALSY.US; MAFFOX.COM; and METYLA.COM,**
each an individual, business entity, or unincorporated association,

Defendants.
_______________________________________/

**REPORT AND RECOMMENDATION ON PRELIMINARY INJUNCTION**

**THIS CAUSE** is before the Court on Plaintiff Louis Vuitton Malletier's Motion for Preliminary Injunction against Defendants Dealsy.us, Maffox.com, and Metyla.com, each of which is an individual, business entity, or unincorporated association (the "Motion"), ECF No. [11]. The Honorable K. Michael Moore referred the Motion to me "to take all necessary and proper action as required by law and/or issue a Report and Recommendation with respect to Plaintiff's request for a preliminary injunction." *See* ECF No. [15] at 10. For the reasons explained below, I **RECOMMEND** that the Motion, **ECF No. [11]**, be **GRANTED.**

## I. BACKGROUND

Plaintiff is the owner of the federally registered trademarks identified in Paragraph 4 (the "Louis Vuitton Marks") of the Declaration of Hadrien Huet. *See* ECF No. [11-1] at 2–10; ECF No. [23-1]. The Louis Vuitton Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified therein. *See* ECF No. [11-1] at 2–11.

After learning that Defendants were promoting, advertising, offering for sale, and selling

products bearing counterfeit and infringing versions of the Louis Vuitton Marks through internet-based e-commerce stores, Plaintiff hired a licensed private firm to investigate. *See* ECF No. [11-1] at 12. As part of its investigation, Plaintiff's investigative firm investigated Defendants' promotion and sale of possibly counterfeit and infringing Louis Vuitton-branded products and documented the available payment account data for money paid to Defendants for the sale of counterfeit Louis Vuitton-branded products. *See* ECF No. [11-1] at 12; ECF No. [11-3] at 1–2; ECF No. [11-4] at 1–2. Plaintiff's investigative firm did so by accessing Defendants' internet-based e-commerce stores — Dealsy.us, Maffox.com, and Metyla.com — and placing an order to purchase from each e-commerce store a product that appeared to bear counterfeits of the Louis Vuitton Marks. *See* ECF No. [11-4] at 2–3. Plaintiff's investigative firm requested that the potentially infringing products be shipped to addresses in the Southern District of Florida. *See* ECF No. [11-4] at 2–3.

Defendants processed each order entirely electronically.[1] *See* ECF No. [11-4] at 2–3. After submitting the orders, Plaintiff's investigative firm documented the payment account data used to finalize payment for the products ordered from Defendants.[2] Plaintiff's investigative firm also took detailed webpage captures and images of the possibly counterfeit and infringing Louis Vuitton-branded products it ordered through Defendants' e-commerce store names, which it sent to Plaintiff for inspection. *See* ECF No. [11-1] at 12; ECF No. [11-3] at 1–2; ECF No. [11-4] at 2–3. Plaintiff reviewed the detailed webpage captures and images that its investigative firm

[1] To complete their offer and sale of the potentially counterfeit and infringing Louis Vuitton-branded products, Defendants use both their e-commerce store names (Dealsy.us, Maffox.com, and Metyla.com) and electronic communication conducted through private messaging applications and services. *See* ECF No. [11-4] at 2–3 & n.1. Defendants also provided contact e-mail addresses in connection with their e-commerce store names. *See* ECF No. [11-3] at 2; ECF No. [11-4] at 2–3 & n.3.

[2] To avoid adding money to Defendants' coffers, the orders were not finalized. *See* ECF No. [11-3] at 2 & n.1; ECF No. [11-4] at 2–3 & n.2.

provided; Plaintiff also reviewed Defendants' internet-based e-commerce stores. *See* ECF No. [11-1] at 12–13. Those reviews revealed that the branded products Defendants offered for sale in their internet-based e-commerce stores were non-genuine, unauthorized versions of Plaintiff's products. *See* ECF No. [11-1] at 12–13.

Based on its investigation and review of Defendants' products, Plaintiff filed a Complaint for Damages and Injunctive Relief (the "Complaint"). *See* ECF No. [1]. The Complaint included claims for trademark counterfeiting and infringement, in violation of 15 U.S.C. § 1114 (Count I); false designation of origin, in violation of 15 U.S.C. § 1125(a) (Count II); common law unfair competition (Count III); and common law trademark infringement (Count IV). *See* ECF No. [1] at 19–23. Plaintiff requested as relief both a comprehensive injunction aimed at preventing Defendants from selling the counterfeit and infringing products and monetary damages in the amount of either Defendants' profits from the products or $2,000,000 for each counterfeit trademark used and product type offered for sale or sold, as 15 U.S.C. § 1117(c)(2) authorizes. *See* ECF No. [1] at 24–31.[3]

Plaintiff then filed an *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (the "TRO Application"). *See* ECF No. [11]. In the TRO Application, Plaintiff asked "for entry of a temporary restraining order and an order restraining transfer of assets, and upon expiration of the temporary restraining order, a preliminary injunction against Defendants" pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, 28 U.S.C. § 1651(a), and "this Court's inherent authority." *See* ECF No. [11] at 1. After finding that Plaintiff had met all four elements required to qualify for a temporary restraining

[3] Plaintiff later amended the Complaint to include Defendants' names in the caption of the case (the "Amended Complaint"), *see* ECF No. [23] at 1, but did not make any substantive changes to the allegations, claims, or relief sought, *compare* ECF No. [23], *with* ECF No. [1].

order ("TRO"), Judge Moore granted the TRO Application and issued a TRO on October 11, 2024.[4] *See* ECF No. [15].

As required by Judge Moore's Order granting the TRO, *see* ECF No. [15] at 10–11, Plaintiff served each Defendant with a copy of the Complaint, the Order granting Plaintiff a TRO, and all filings in this matter, *see* ECF No. [26]; ECF No. [27]; ECF No. [28]. Plaintiff effectuated that service by email and through Plaintiff's designated serving notice website, as the TRO Order directed. *See* ECF No. [15] at 10–11; ECF No. [26]; ECF No. [27]; ECF No. [28]. Plaintiff also served each Defendant with a copy of the Court's Order Setting Preliminary Injunction Hearing, ECF No. [25], which had scheduled the preliminary injunction hearing in this matter for November 7, 2024, at 10:30 a.m. (the "Hearing"). *See* ECF No. [25]; ECF No. [29]; ECF No. [30].

The Court held the Hearing on November 7 as scheduled. *See* ECF No. [33]. Plaintiff's counsel was present at the Hearing and provided evidence supporting the Motion. *See* ECF No. [33]. Defendants had notice of but were not present at the Hearing. *See* ECF No. [33]. Defendants also have not responded to the Motion, have not made any filing in this case, and have not appeared in this matter, either individually or through counsel.[5] The Motion is now ripe for review.

## II. LEGAL STANDARDS

The Federal Rules of Civil Procedure authorize courts to issue preliminary injunctions. *See* Fed. R. Civ. P. 65(a). To obtain a preliminary injunction, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the

---

[4] The TRO was originally set to expire on October 25, 2024, but on Plaintiff's motion, *see* ECF No. [20], Judge Moore extended the TRO until November 8, *see* ECF No. [24].

[5] Plaintiff submitted a Notice of Filing, ECF No. [31], in which one of the Defendants (the administrator of the PayPal account with Merchant ID 5SPGDZCY8TB4) communicated with Plaintiff's counsel about this lawsuit, *see* ECF No. [31-1] at 3. The communication, which was dated October 19, 2024, however, did not voice any objection to the entry of the preliminary injunction or otherwise contest the merits of the case. *Id.*

relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Before a court may issue a preliminary injunction, notice must be provided to the adverse party. *See* Fed. R. Civ. P. 65(a).

"To prevail on a trademark infringement claim under 15 U.S.C. § 1114, the plaintiff must show that it owns a valid trademark, that its mark has priority, that the defendant used such mark in commerce without the plaintiff's consent, and that the defendant's use is likely to cause consumer confusion as to the source, affiliation or sponsorship of its goods or services." *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1264–65 (S.D. Fla. 1999). "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm." *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 191 (11th Cir. 2005) (citation omitted).

"To state a claim for unfair competition and false designation of origin, a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two," *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1355–56 (S.D. Fla. 2012) (quotation marks omitted), which are the same elements required "to prevail on [a] federal claim of trademark infringement," *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012). *Cf. Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1262 (S.D. Fla. 2019) (explaining that the "test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim – i.e., whether the public is likely to be

deceived or confused by the similarity of the marks at issue").

"Courts may use an analysis of federal infringement claims as a measuring stick in evaluating the merits of state law claims of unfair competition." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001). Indeed, "analysis of the Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim." *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003); *see also Chanel, Inc.*, 362 F. Supp. 3d at 1263 ("The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act.").

Under 15 U.S.C. § 1117(a), a party may be entitled to recover, as an equitable remedy, illegal profits gained through another party's distribution and sale of products bearing counterfeits marks or infringing upon trademarks. *See Levi Strauss & Co.*, 51 F.3d at 987. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset restraint, in order to assure the availability of permanent relief." *Id.* (citation omitted).

**III. DISCUSSION**

As noted above, to obtain a preliminary injunction, Plaintiff must demonstrate that it has a substantial likelihood of success on the merits of its claims, that it will suffer irreparable injury if an injunction is not granted, that the threatened injury outweighs the harm the relief would inflict on Defendants, and that the entry of an injunction would serve the public interest." *See Schiavo*, 403 F.3d at 1225–26. Plaintiff has met each of these requirements.

First, Plaintiff has a substantial likelihood of success on the merits of its claims. To do so, Plaintiff must show that it owns a valid trademark, that its mark has priority, that Defendants "used

its mark in commerce without Plaintiff's consent, and that Defendants' use is likely to cause consumer confusion as to the source, affiliation or sponsorship of its goods or services." *See Carnival Corp.*, 74 F. Supp. 2d at 1264–65. Plaintiff has certainly established that it owns the Louis Vuitton Marks and that the Louis Vuitton Marks have priority. *See generally* ECF No. [23]; ECF No. [23-1]; ECF No. [11-1]. And Defendants do not have authorization to use Plaintiff's trademarks. *See generally* ECF No. [23]; ECF No. [23-1]; ECF No. [11-1].

Weighing the allegations in the Amended Complaint, the Court finds that Plaintiff has a strong probability of proving at trial that the products Defendants are selling and promoting for sale are copies of Plaintiff's products that bear and use copies of the Louis Vuitton Marks. The Court also finds that Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisements, promotions, sales, offers for sale, or distribution of goods bearing and using counterfeits, reproductions, or colorable imitations of the Louis Vuitton Marks. *See generally* ECF No. [23]; ECF No. [11-1]. The strong similarities between Plaintiff's trademarks and Defendants' products are readily apparent. *Compare* ECF No. [23-1], *with* ECF No. [11-5]. Because it can prove all the elements of its trademark infringement and unfair competition claims, Plaintiff is therefore likely to prevail on its claims at trial. *See Carnival Corp.*, 74 F. Supp. 2d at 1264–65; *Brain Pharma, LLC*, 858 F. Supp. 2d at 1355–56; *Suntree Techs*, 693 F.3d at 1346; *Chanel, Inc.*, 362 F. Supp. 3d at 1262–63; *Planetary Motion, Inc.*, 261 F.3d 1at 1193 n.4; *Gift of Learning Found., Inc.*, 329 F.3d at 802.

Second, Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. As noted above, a sufficiently strong showing of likelihood of confusion may by itself constitute a showing of a substantial threat of irreparable harm. *See Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x at 191. Based on the evidence before the Court, there is a

strong showing of a likelihood of confusion caused by Defendants' alleged trademark infringement. Specifically, Defendants are advertising, offering for sale, and selling goods bearing unauthorized copies of Plaintiff's trademarks. *See generally* ECF No. [11-1]; ECF No. [11-3]; ECF No. [11-4]. Accordingly, the Court finds that there is a sufficiently strong showing that consumers may believe they are viewing or purchasing genuine goods Plaintiff authorized. Further, the Court finds that there is good cause to believe that consumers may be misled or confused by the quality of these products, and that Plaintiff may suffer reputational harm, loss of trade, and loss of goodwill as a result. *See Ferrellgas Partners*, 143 F. App'x at 190.

Third, the threatened injury to Plaintiff outweighs the potential harm to Defendants. Plaintiff avers that it has expended substantial time, money, and resources to develop the alleged quality, reputation, and goodwill associated with its trademarks. *See generally* ECF No. [23]; ECF No. [11-1]. Defendants suffer no legitimate hardship because Defendants are not authorized to engage in their allegedly infringing activities. Therefore, the potential harm to Plaintiff's reputation and goodwill outweighs the potential harm to Defendants of restraining Defendants' trade in counterfeit goods bearing unauthorized copies of Plaintiff's trademark.

Fourth, the public also has an interest in not being misled as to the origin, source, or sponsorship of trademarked products. *See Nailtiques Cosmetic Corp. v. Salon Sciences, Corp.*, No. 96-2709-CIV-NESBITT, 1997 WL 244746, at *5 (S.D. Fla. Jan. 10. 1997); *Heron Dev. Corp. v. Vacation Tours, Inc.*, No. 16-cv-20683, 2017 WL 2895921, at *9 (S.D. Fla. Apr. 13, 2017). As a result, the public interest favors issuance of the preliminary injunction to protect Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

Finally, as noted above, § 1117(a) allows the Court to award to Plaintiff illegal profits

gained through Defendants' distribution and sale of products bearing counterfeits or infringing upon Plaintiff's trademarks. *See Levi Strauss & Co.*, 51 F.3d at 987. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset restraint, in order to assure the availability of permanent relief." *Id.* (citation omitted). Given the inherently deceptive nature of the counterfeiting business and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained. And asset restraints can be particularly important where counterfeiters conduct their business entirely online and may be practically able to thwart adequate relief by transferring assets out of the reach of a plaintiff. *See generally* ECF No. [11-3]. Accordingly, the Court finds that there is good reason to believe Defendants will hide or transfer its allegedly ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## IV. CONCLUSION

For the above reasons, I respectfully **RECOMMEND** that Plaintiff's Motion for Preliminary Injunction, **ECF No. [11]**, be **GRANTED**. I further **RECOMMEND** that the preliminary injunction provide as follows:

1. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby restrained and enjoined until further Order of this Court as follows:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using Plaintiff's Trademarks or any confusingly similar trademarks, other than those

actually manufactured or distributed by Plaintiff; and

b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using Plaintiff's trademarks or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using Plaintiff's trademarks or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

2. Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order shall immediately discontinue, to the extent not already done, the use of Plaintiff's trademarks, or any confusingly similar trademarks, on or in connection with all Internet-based e-commerce stores owned and operated, or controlled by them, including the Internet-based e-commerce stores operating under their E-commerce Store Names;

3. Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order shall immediately discontinue, to the extent not already done, the use of Plaintiff's trademarks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any web page

(including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to Internet-based e-commerce stores owned or operated by any Defendant, including the Internet-based e-commerce stores operating under their E-commerce Store Names;

4. Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Internet-based e-commerce stores operating under their E-commerce Store Names and shall take all steps necessary to retrieve computer files relating to the use of the Internet-based e-commerce stores operating under their E-commerce Store Names that may have been deleted before the entry of this Order;

5. Upon Plaintiff's request, to the extent not already done, the privacy protection service for any of the E-commerce Store Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered to disclose to Plaintiff the true identities and contact information of those registrants;

6. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, or money transmitters, including but not limited to, PayPal, Inc. ("PayPal"), and their related companies and affiliates shall, to the extent not already done, (i) immediately identify all financial accounts and/or sub-accounts associated with the Internet-based e-commerce stores operating under the E-commerce Store Names, the payment accounts, merchant identification numbers, and/or the e-mail addresses identified on Schedule "A" hereto, as well as any accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii)

restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court;

7. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, or money transmitters, including but not limited to, PayPal, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiff's counsel with all data that details (i) an accounting of the total funds restrained and identifies the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) that have been restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, or money transmitter, including but not limited to, PayPal, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court;

8. Any Defendant or any financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out herein;

9. This Order shall apply to the E-commerce Store Names, associated Internet-based ecommerce stores, and any other seller identification names, e-commerce stores, or financial accounts that are being used by Defendants to counterfeit Plaintiff's trademarks at issue in this action and/or unfairly compete with Plaintiff;

10. This Order shall not apply to any Defendant or associated e-commerce store dismissed

from this case or as to which Plaintiff has withdrawn its request for a preliminary injunction;

11. Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall maintain its posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of this Court. In the Court's discretion, the bond may be subject to increase should the amount of funds seized exceed $10,000.00.

12. In addition, to provide further notice of this proceeding, and all other pleadings, orders, and documents filed in this case, the owners, operators, and/or administrators of the financial institutions, payment processors, banks, escrow services, money transmitters, and marketplace platforms, including but not limited to PayPal, and their related companies and affiliates shall, at Plaintiff's request, provide Plaintiff's counsel with any e-mail address known to be associated with Defendants' respective E-commerce Store Names.

Pursuant to Local Magistrate Rule 4(b), the parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND ORDERED** in Chambers in Miami, Florida, on November 8, 2024.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record

**SCHEDULE "A"**
**DEFENDANTS BY E-COMMERCE STORE NAME, FINANCIAL ACCOUNTS, AND E-MAIL ADDRESSES**

| Def. No. | Defendant / E-commerce Store Name | Merchant Number | E-mail Address | WhatsApp Contact Number |
|---|---|---|---|---|
| 1 | dealsy.us | J7MELXQDE3G54<br>5SPGDZVCY8TB4 | support@dealsy.us | 14452145337 |
| 2 | maffox.com | J7MELXQDE3G54 | support@maffox.com | |
| 3 | metyla.com | J7MELXQDE3G54 | support@metyla.com<br>support@temafes.net | 15014680002 |